TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION : | |
| : | No. 97-406 |
| of : | |
| : | July 14, 1997 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| ANTHONY Da VIGO : | |
| Deputy Attorney General : | |
| : | |

_____

THE HONORABLE ROBERT A. RYAN, JR., COUNTY COUNSEL, COUNTY OF SACRAMENTO, has requested an opinion on the following question:

May a county water district adopt a service fee structure providing a lower water rate for its public agency customers?

CONCLUSION

A county water district may adopt a service fee structure providing a lower water rate for its public agency customers.

ANALYSIS

Recently a county water district adopted a new service fee structure increasing the water rate for its customers. School districts and park districts requested that the new rate not be applied to them for one year and that they pay 50 percent of the new rate thereafter. The question presented for resolution is whether the water district may agree to the requests of the school districts and park districts. We conclude that it may.

A county water district is operated pursuant to the provisions of the County Water District Law (Wat. Code, §§ 30000-33901). **Footnote No. 1** It is a "municipal corporation" within the meaning of section 9 of article XI of the Constitution, **Footnote No. 2** and has broad powers that include the right to contract to provide water to other public agencies (§ 31408; *Arcade County Water Dist.* v. *Arcade Fire Dist.* (1970) 6 Cal.App.3d 232, 238-239).

A county water district is authorized to establish rules and regulations for the sale, distribution, and use of its water (§ 31024) and is required to fix water rates (§§ 31007, 31024) that are reasonable and fair (*Hansen* v. *City of San Buenaventura* (1986) 42 Cal.3d 1172, 1181; *Carlton Santee Corp.* v. *Padre Dam Mun. Water District* (1981) 120 Cal.App.3d 14, 30; *Kennedy* v. *City of Ukiah* (1977) 69 Cal.App.3d 545, 552; *Boynton* v. *City of Lakeport Mun. Sewer Dist.* (1972) 28 Cal.App.3d 91, 94-95).

We are not asked whether a water district *must* give other public agencies a preferential water rate. Clearly it is not so required. In *Arcade County Water Dist.* v. *Arcade Fire Dist.*, *supra*, 6 Cal.App.3d 232, for example, the court rejected such an argument made by five fire protection districts. The court stated that "a county water district is under no obligation to supply free water service to a fire district . . . ." (*Id*., at p. 239.) The court held that the fire districts must pay the water rate charged them by the water district as long as the rate is not "unreasonable, excessive and arbitrary." (*Id*., at p. 240.)

Certain language in the *Arcade* case prompts the present inquiry. The court referred to the "inequity" of supplying free water to the fire districts:

"The inequity of requiring the water districts to supply free water to the fire districts is shown by the fact that some of the fire districts are not coterminous with the particular water district. Thus, as quoted by Judge Irving H. Perluss in his [memorandum] opinion overruling the demurrers to the complaints from `Water District Organization,' A Report of the Assembly Interim Committee on Water to the California Legislature (vol. 26, no. 14, p. 25 (Jan. 1965)) `the area receiving the benefits of fire protection facilities may not pay their fair share of the cost through the financing water district. Second, most water districts pay for their water service out of water revenue, that is, water charges, whereas almost all fire agencies are financed by direct tax on assessed valuation. The amount of water used by a home or business frequently bears no relation to the value of the property receiving the fire protection. Consequently, if additional fire protection costs were allocated through additional water rate charges, a burden would be placed upon the water users of public water districts which in no way would be commensurate to the benefits received.'" (*Arcade County Water Dist.* v. *Arcade Fire Dept.*, *supra*, 6 Cal.App.3d at 239.)

Does such language by the court compel the conclusion that a water district may not charge public agencies less than its private customers? We believe not.

First, the *Arcade* court was not considering whether the two water districts in question *could* provide water to the fire districts at a lower rate. Indeed, the court appears to acknowledge that the water districts could have provided free water service "as a gift" to the fire districts. (*Arcade County Water Dist.* v. *Arcade Fire Dept.*, *supra*, 6 Cal.App.3d at 237.)

More importantly, numerous courts dealing with this precise issue have held that a uniform water rate for all customers is not required under the "reasonableness" test. (*Hansen* v. *City of San Buenaventura*, *supra*, 42 Cal.3d 1172 [nonresidents charged more than residents of city]; *Kennedy* v. *City of Ukiah*, *supra*, 69 Cal.App.3d 545 [tenants in multiple unit dwellings charged more than single family residences]; *Elliott* v. *City of Pacific Grove* (1975) 54 Cal.App.3d 53 [nonresidents charged more than residents of city].) In *Durant* v. *City of Beverly Hills* (1940) 39 Cal.App.2d 133, 138-139, the court explained:

". . . . Lack of uniformity in the rate charged is not necessarily unlawful discrimination, and is not *prima facie* unreasonable. Discrimination to be objectionable must draw an unfair line or strike an unfair balance between those in like circumstances having equal rights and privileges. `The fundamental theory of rate making for public utilities is that there shall be but one rate for a particular service, and a charge made to one patron or consumer different from that made to another, for the same service under like circumstances, constitutes undue discrimination and renders the charge improper. The fact, however, that a rate is discriminatory by comparison with another rate does not necessarily establish or imply that either of them is unreasonable in the sense of being inadequate or exorbitant. . . . It is only unjust or unreasonable discrimination which renders a rate or charge unreasonable; and *a utility may, without being guilty of unlawful discrimination, classify its customers or patrons upon any*

*reasonable basis, as according to the purpose for which they receive the utility's service or product,* or the quantity or amount received, and, subject to the general requirements of reasonableness, make separate rates for each class or group, even though there be but one customer included therein.' [Citation.]

". . . . The rates here complained of, having been fixed by the lawful rate-fixing body, must be presumed to be reasonable, fair and lawful. The appellant was entitled to rest upon that presumption until the respondent made some showing to the contrary. `Mere difference in the rates charged various classes of users is not sufficient to establish an unjustifiable discrimination.' [Citation.] There are many reasons of which the court might take judicial notice and which would justify a difference in rates of service to consumers differently situated. These reasons would support the presumption that the action of the city council in fixing the rates was reasonable and fair. But, in the absence of any showing of any character that the charges were unreasonable, unfair or fraudulently or arbitrarily established, the trial court had no case for any relief to respondent. In short, the respondent has sought to substitute the court for the city council and have the court fix the charges which he should pay. The universal rule is that in these circumstances the court is not a rate-fixing body, that the matter of fixing water rates is not judicial, but is legislative in character, and that the limit of its function and jurisdiction is to find, upon a proper showing, that the rates fixed are unreasonable and unfair. [Citations.]" (Italics added.)

In *Hansen* v. *City of San Buenaventura*, *supra*, 42 Cal.3d 1172, the Supreme Court approved a three-tiered classification scheme that imposed different water rates upon city residents, nonresidents, and users of nonpotable, untreated water. (*Id*., at p. 1187.) It also noted classifications based upon industrial use and domestic use. (*Ibid*.)

It may not be fairly argued that private water users are "`in like circumstances having equal rights and privileges'" (*Hansen* v. *City of San Buenaventura*, *supra*, 42 Cal.3d at 1180) vis-a-vis public agency water users such as school districts and park districts. The purpose of the latter is to serve the general public. Their water usage serves to promote the accomplishment of essential government services. Taxpayers who provide funds to school districts and park districts are the customers of the water district and receive government services from the other public agencies.

Both the Constitution and the Legislature have recognized the special character of public agencies in exempting them from the payment of specified taxes, fees, and charges. For example, "[p]roperty owned by a local government" is generally exempt from property taxation. (Cal. Const., art. XIII, § 3.) Government Code section 6103 provides in part:

"Neither the state nor any county, city, district, or other political subdivision, nor any public officer or body, acting in his official capacity on behalf of the state, or any county, city, district or other political subdivision, shall pay or deposit any fee for the filing of any document or paper, for the performance of any official service, or for the filing of any stipulation or agreement which may constitute an appearance in any court by any other party to the stipulation or agreement. . . ."

We believe that a water district may thus place public agencies in a different rate classification from other water users based upon "the purpose for which they receive the . . . service or product." (*Durant* v. *City of Beverly Hills*, *supra*, 39 Cal.App.2d at 139.)

Finally, we note that in *Hansen* v. *City of San Buenaventura*, *supra*, 42 Cal.3d at 1182, the nonresidents of the city were assessed a 70 percent surcharge over the city's residents while an independent analysis "found a surcharge of 98.5 percent was justified." If a private water user may be charged less than what is "justified" under the reasonableness test, so also may a public agency. **Footnote No. 3**

what is "justified" under the reasonableness test, so also may a public agency. **Footnote No. 3**

We conclude that a county water district may adopt a service fee structure providing a lower water rate for its public agency customers.

\* \* \* \* \*

**Footnote No. 1**
All section references herein are to the Water Code.
F**ootnote No. 2**
Subdivision (a) of article XI, section 9, provides:

"A municipal corporation may establish, purchase, and operate public works to furnish its inhabitants with light, water, power, heat, transportation, or means of communication. It may furnish those services outside its boundaries, except within another municipal corporation which furnishes the same service and does not consent."

**Footnote No. 3**
The constitutional prohibition against a public agency making a gift of any "money or thing of value" (Cal.Const., art. XVI, § 6) has no application here, since there is no legal obligation to charge a uniform rate for water. (See *Community Television of So. Cal.* v. *County of Los Angeles* (1975) 44 Cal.App.3d 990, 996; *Golden Gate Bridge etc. Dist.* v. *Kuehring* (1970) 4 Cal.App.3d 204, 207; 80 Ops.Cal.Atty.Gen. 56, 57-60 (1997); 69 Ops.Cal.Atty.Gen. 168, 180 (1986); 64 Ops.Cal.Atty.Gen. 478, 481-482 (1981).)
Also, we are cognizant of recently adopted articles XIII C and XIII D of the Constitution, providing for the right to vote on newly adopted or increased fees or charges for services relating to property ownership. Since we are concerned here only with a rate preference for public agencies and it does not inexorably follow that such a preference would result in a fee increase for other water users or a fee for other water users that would "exceed the proportional cost of the service attributable to the parcel" (Cal. Const., art. XIII D, § 6, subd. (b)(3)), we have no occasion here to determine whether the fees in question are an "incident of property ownership" (Cal. Const., art. XIII D, § 2, subd. (e)). (See also § 71616; *Brydon* v. *East Bay Mun. Utility Dist.* (1994) 24 Cal.App.4th 178, 187-195, 202-202.)