[No. E015785. Fourth Dist., Div. Two. Nov. 19, 1996.]

Conservatorship of the Person and Estate of BERTHA LEFKOWITZ. BONNIE CAMBALIK, as Conservator, etc., Petitioner and Respondent, v. LEROY LEFKOWITZ, Objector and Appellant.

COUNSEL

S. Susan Willingham for Objector and Appellant.

Michael J. Molloy for Petitioner and Respondent.

OPINION

**McKINSTER, Acting P. J.**—A conservatee's son appeals from an order approving the conservator's final accounting over the son's objections. Finding that certain fees ordered to be paid by the conservatee's estate were compensation for services which were rendered for the personal benefit of the conservator rather than for the benefit of the conservatee, we modify the order by deducting the amount of the improper fees and affirm the order as modified.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Bertha Lefkowitz, the conservatee, was 87 years old and residing in a convalescent center in San Bernardino. Her conservator was Bonnie Cambalik, who had been appointed in 1992. Cambalik was not related to the conservatee. Instead, she is a professional private conservator. (Prob. Code, § 2340 et seq.[1])

In January of 1994, the conservatee's son, LeRoy Lefkowitz (objector), petitioned the superior court for an order removing Cambalik as conservator and appointing the objector as successor conservator. (§§ 2650-2651 [removal]; §§ 2680-2682 [successor].) Cambalik opposed the petition, both

---

[1]Unless specified otherwise, all further section references are to the Probate Code.

through a written response and by appearing with counsel at the hearing on the petition. Following the hearing, the court granted both aspects of the petition, and ordered Cambalik to file her final accounting as conservator within 60 days.

In her final accounting, Cambalik sought compensation for herself in the sum of $3,995 and compensation for her attorney in the sum of $5,140. The objector opposed portions of that compensation. Following an evidentiary hearing in November of 1994, the trial court overruled his objections, approved the final accounting, and approved the fees requested for Cambalik and her counsel. The objector appeals from that order.

## DISCUSSION

Of the compensation sought by Cambalik, $120 (two hours at $60 per hour) represents her appearance at the hearing on the petition for removal. Of the fees sought for her attorney, $2,240 (11.2 hours at $200 per hour) concerns Cambalik's opposition to the petition for removal. The objector opposed any award of compensation for those expenses on the ground that they did not benefit the conservatee. He continues that theme on appeal. While he frames his argument as involving three separate issues,[2] there is in substance only one: Under what circumstances may a conservator be compensated for time and attorney's fees incurred in unsuccessfully resisting a petition to remove the conservator?

The Probate Code directs a trial court, when ruling on a conservator's request for compensation, to allow "any compensation requested in the petition the court determines is just and reasonable . . . for services rendered . . . ." (§ 2640, subd. (c); accord, § 2641, subd. (b).) Similarly, the court is required to allow "any compensation requested in the petition the court determines is reasonable to the attorney for services rendered to the . . . conservator of the person or estate or both." (§ 2640, subd. (c).) The objector would add the qualification that the services rendered are compensable only if they benefited the conservatee or if the conservator reasonably believed in good faith that the services would benefit the conservatee. He is correct.

The relationship between a conservator and a conservatee is a fiduciary relationship, like that between a trustee and a beneficiary. (§ 2101.) Just as a

---

[2]First, the objector argues that Cambalik and her attorney should not have been compensated for time and attorney's fees incurred in opposing the petition for removal of conservator. Second, he argues that the trial court improperly and prejudicially restricted his right to examine Cambalik. Third, he argues that Cambalik failed to sustain her burden of proof at the hearing on the final accounting.

trustee must "administer the trust solely in the interest of the beneficiaries" (§ 16002, subd. (a)), a conservator must exercise his or her powers solely in the interests of the conservatee. In attempting to comply with its duty to the beneficiaries, a trustee is bound to exercise the "reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and *with like aims to accomplish the purposes of the trust* . . . ." (§ 16040, subd. (a), italics added.) Similarly, in attempting to advance the interests of the conservatee, a conservator is bound to exercise "ordinary care and diligence . . . ." (§ 2401, subd. (a).) ■ In short, as a fiduciary, a conservator is bound to act with reasonable prudence and pursuant to a good-faith belief that its actions will tend to accomplish the purpose of its trust by benefiting the conservatee.

■ The right of a fiduciary to be reimbursed for his or her expenses is governed by the same considerations. A trustee's power to incur expenses is limited to those expenses which are reasonably necessary or appropriate to carry out the purposes of the trust. (Rest.2d Trusts, § 188, com. f.) "If the trustee exceeds his [or her] powers in incurring an expense and no benefit is conferred thereby upon the trust estate, [the trustee] is not entitled to indemnity." (*Id.*, § 245, subd. (1), com. a.) Thus, " '[t]he underlying principle which guides the court in allowing costs and attorneys' fees incidental to litigation out of a trust estate is that such litigation is a benefit and service to the trust.' " (*Estate of Baird* (1955) 135 Cal.App.2d 343, 347 [287 P.2d 372], quoting *Dingwell* v. *Seymour* (1928) 91 Cal.App. 483, 513 [267 P. 327].) If it was not reasonably necessary for the trustee to engage in litigation, he or she will not be reimbursed for the attorney's fees which he or she incurred. (*Conley* v. *Waite* (1933) 134 Cal.App. 505, 506 [25 P.2d 496].) Moreover, in addition to being reasonable, the decision must be properly motivated: "It is a general rule that trustees are entitled to reimbursement for expense incurred in good faith in the execution of the trust." (*Estate of Gartenlaub* (1921) 185 Cal. 648, 654 [198 P. 209, 16 A.L.R. 520].)

In short, a trustee may not be indemnified for an expense unless the trustee subjectively believed that the expense was necessary or appropriate to carry out the purpose of the trust and that belief was objectively reasonable.

That both objective reasonableness and subjective good faith are necessary has been illustrated in cases dealing with the very question before us, i.e., the issue of whether to compensate a fiduciary or its attorney for time and expenses incurred in opposing a meritorious petition to remove the fiduciary or otherwise terminate the fiduciary relationship. For example,

*Estate of Gilmaker* (1964) 226 Cal.App.2d 658 [38 Cal.Rptr. 270] involves the removal of a trustee. There, it was held that if no reasonable trustee could have believed that there was a sound basis for resisting the petition for the trustee's removal, a trial court's order reimbursing the trustee for its attorney's fees incurred in opposing the petition must be reversed, even if the trustee honestly believed that the petition was groundless. (*Id.* at pp. 662-663.) "[I]t is not reasonable or fair to rely upon the element of good faith, standing alone, as the criterion by which to determine whether the trust estate should bear the cost of the trustee's defense of its untenable position." (*Id.* at p. 663; accord, *In re Pelgram's Estate* (1933) 146 Misc. 750, 756 [262 N.Y.S. 848, 854-855].)

While a good-faith belief that the trustee's opposition will further the purpose of the trust is insufficient unless the belief is reasonable, the converse is also true: in the absence of good faith, an otherwise reasonable expenditure will not be reimbursed. For instance, in *Guardianship of Cookingham* (1955) 45 Cal.2d 367 [289 P.2d 16], the issue was whether a guardian should be compensated for expenses incurred in unsuccessfully opposing a petition to terminate the guardianship. The former ward contended that compensation should be denied because the guardian did not obtain approval from the court in advance of incurring the expense. The Supreme Court rejected that argument, stating: "There is no compelling reason for requiring a guardian personally to bear the cost of an unsuccessful opposition to his ward's application for restoration, conducted in good faith, merely because he failed to obtain prior authorization. Indeed, it may be extremely difficult for the guardian to determine the position he should take without professional advice at the commencement of the proceeding. If it is conducted in good faith, the guardian should be allowed the reasonable expenses incurred in the opposition. If not in good faith, the expense, of course, should not be allowed." (*Id.* at p. 373.)

 Applying the rule to the fiduciary relationship and the procedural circumstance at issue here, a conservator is entitled to compensation for his or her time and attorney's fees incurred in unsuccessfully opposing a petition for his or her removal as conservator only if (1) the conservator's decision to oppose the petition was motivated by a good-faith belief that it would be in the best interests of the conservatee if the petition were defeated and the existing conservator continued to serve,[3] and (2) that belief was objectively reasonable.

---

[3]When a trustee has been appointed by the trustor, the identity of the trustee is part of the trustor's plan to benefit the beneficiaries. In that event, the trustee has a duty to oppose any unmeritorious effort to have the selected trustee removed. (*Jessup* v. *Smith* (1918) 223 N.Y. 203, 207 [119 N.E. 403, 404].) Arguably, therefore, a conservator nominated by the

By permitting Cambalik to recover compensation for her time and her attorney's fees incurred in trying to defeat the removal petition in this case, the trial court impliedly found that both of those two elements had been established. However, there is no substantial evidence in the record before us to support the former element.[4]

Cambalik admitted that her general practice is to relinquish her position as conservator whenever there is a family member who is willing to take over, and that she told the objector that she would do so in this case. Her only explanation for failing to do so was that the objector had subsequently moved for an order removing her, as opposed to a motion for his appointment as successor conservator following a voluntary resignation. As she said, "I opposed it as a removal, not as a successor." She explains the significance of that distinction in her appellate brief: "Both the County Clerk and bonding surety companies make a point of inquiring into the area of removal. A removal goes directly to ones [sic] character and ability to serve as a conservator."[5]

In short, Cambalik conceded that she was opposed, not to the appointment of the objector as a successor conservator, but merely to the manner in which the objector went about it. Furthermore, her objections to the procedure utilized by the objector were prompted, not by concerns for the interests of the conservatee (e.g., that the objector was unqualified or otherwise unsuited as a successor conservator), but by concerns for Cambalik's self-interest, i.e., the impact that her removal would have on her career as a professional conservator.

These factual admissions are incompatible with a good-faith belief that the petition for removal, if successful, would harm the conservatee's interests. To the contrary, the only conclusion supported by the evidence is that the conservator's fees and attorney's fees necessary to assert Cambalik's opposition to the petition for removal were incurred solely to protect the personal interests of the conservator. Therefore, they should not have been ordered to be satisfied out of the conservatee's estate. The trial court erred by doing so.

---

conservatee would have the duty to oppose, not just a removal which would harm the conservatee, but any removal petition which is unmeritorious, because it would frustrate the conservatee's intent. (Cf. § 2650, subd. (i) [requiring the court to give special consideration to guardians nominated by the ward's parents].) We need not decide that issue, however, because there is no evidence that the conservatee nominated Cambalik to be her conservator.

[4]As the party submitting the challenged accounting, Cambalik had the burden to prove the propriety of the expenses for which compensation was sought. (*Estate of Miller* (1968) 259 Cal.App.2d 536, 549-550 [66 Cal.Rptr. 756].) As will be seen, her testimony proved just the opposite.

[5]There is no explanation why Cambalik did not seek to avoid those consequences by simply resigning (§ 2660) rather than by opposing the petition for removal.

## Disposition

The order is modified by reducing the compensation to be paid to Cambalik by $120 to $3,875 and by reducing the compensation to be paid to Mr. Molloy, her counsel, by $2,240 to $2,900. As modified, the order is affirmed.

Richli J., and Ward J., concurred.