Filed 12/20/24  Mendonca v. Wolff CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROYCE MENDONCA, as Conservator, etc., et al.<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>SHARON WOLFF et al.,<br><br>    Defendants and Respondents. | A169030, A169031<br><br>(Humboldt County Super. Ct. Nos. PR2100161, PR2100162) |

Royce Mendonca, a Probate Code conservator, filed a petition for injunctive relief sounding in defamation, alleging the daughter and son-in-law of one of the conservatees published false and defamatory statements about Mendonca and his attorney, Chris Carol Hamer.  The probate court granted a motion for attorney fees, finding the daughter and son-in-law prevailed on their special motion to strike (anti-SLAPP motion) filed under Code of Civil Procedure[1] section 425.16, the anti-SLAPP statute.  The court ordered Mendonca, personally, and Hamer to pay the awarded fees. Mendonca and Hamer appeal, arguing the order is void because the court could not order them to pay attorney fees when they were not parties to the

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

conservatorship proceeding in their personal capacities. We conclude the attorney fees order is not void, and we affirm.

## I. BACKGROUND

In December 2021, the probate court appointed Mendonca as conservator of the persons and estates of spouses Ronald W. Keller (Ronald) and Barbara Lynn Keller (Barbara; collectively the Kellers). In doing so, the court denied Sharon Wolff's (Sharon) competing petitions for conservatorships of the Kellers.[2] As alleged by Mendonca, following his appointment as conservator, Sharon and her husband, Steve Wolff (collectively the Wolffs), published defamatory and false material concerning Mendonca and his attorney, Hamer, on various platforms and formats, including in an online newspaper run by the Wolffs.

In August 2022, Mendonca filed a "petition for preliminary injunction and permanent injunction, restraining [the Wolffs] from libel, slander and harassment of conservator and his attorney" (petition). (Boldface and capitalization omitted.) The petition sought an order restraining the Wolffs "from publishing or otherwise disseminating false and derogatory statements, articles, letters or pictures in writing or orally, concerning" Mendonca or Hamer and ordering the Wolffs to remove such items. The petition alleged the Wolffs made statements, including: Mendonca and Hamer are kidnappers and kidnapped Barbara; Mendonca became Barbara's conservator to steal her money; Hamer used fraudulent documents to obtain

---

[2] Mendonca is the Kellers' nephew through Ronald. Sharon is Barbara's daughter and Ronald's stepdaughter. There are two conservatorship cases—one for Ronald and one for Barbara. Similar or identical filings, arguments, and rulings were made in each case. We consolidated the appeals. When we reference a term in the singular, such as a proceeding, petition, motion, or order, it should be read as having occurred in both cases.

conservatorship over Barbara for the mutual financial benefit of Mendonca and Hamer; Mendonca and Hamer committed elder financial abuse; Hamer habitually lies; Mendonca illegally placed Barbara in a care facility; and Hamer preys on the vulnerable elderly. While the first page identified only Mendonca as bringing the petition, and only in his role as conservator, both Mendonca and Hamer are identified as requesting the specified relief from the court.

The Wolffs filed an anti-SLAPP motion to strike the petition pursuant to section 425.16. They argued Mendonca and Hamer's attempt to file a petition to address their personal defamation claims within the conservatorship proceeding constituted a strategic lawsuit aimed to chill the Wolffs' public participation. During a subsequent status conference, the probate court asked Hamer why the defamation petition was filed in a probate case where Sharon was "a legal stranger," rather than as a general civil matter. Hamer explained that they filed the petition in the conservatorship proceeding as "a gentler remedy" in order to make the Wolffs stop, but if the court wanted them to file it as a separate civil action, they could do that. Mendonca subsequently dismissed the petition before the date set for the anti-SLAPP motion to be heard.

In January 2023, the Wolffs filed a motion for attorney fees on the grounds that they prevailed on the anti-SLAPP motion and, therefore, were entitled to fees under the mandatory provision of section 425.16. The notice of motion requested an award of attorney fees. It did not specifically request who should be ordered to pay the fees. In their memorandum of points and authorities, however, the Wolffs referred to Mendonca and Hamer as the real parties in interest and requested that they—Mendonca and Hamer—be ordered to pay the fees, not the Kellers. Mendonca opposed the motion

3

through his attorney Hamer. Mendonca explained that he dismissed the petition based on the probate court's remark that it should be filed as an independent civil action rather than in the conservatorship proceeding. He did not dismiss it based on any perceived lack of merit. As to attorney fees, Mendonca argued there was no basis to charge him personally when the petition was filed "in his capacity as Conservator, and for the purpose of causing [the Wolffs'] interference with his administration as Conservator, with constant posting of false and defamatory matter about him on the internet, to cease."

The probate court heard the Wolffs' motion for attorney fees in March 2023. During the hearing, Hamer confirmed that the petition was one for defamation, asserting that they did "state a defamation action." She argued the Wolffs' statements caused damage to Mendonca's occupation and reputation. Hamer repeated the contention that there was no legal basis to award attorney fees against her or against Mendonca personally.

In June 2023, the probate court issued an order granting the Wolffs' motion for attorney fees. The court went through the two-step anti-SLAPP analysis and concluded that, had the motion been decided on the merits, the Wolffs would have prevailed and were, therefore, entitled to attorney fees.[3]

---

[3] If a plaintiff voluntarily dismisses an action after an anti-SLAPP motion has been filed, the trial court retains jurisdiction to award attorney fees. (*Tourgeman v. Nelson & Kennard* (2014) 222 Cal.App.4th 1447, 1456.) A determination of whether a defendant would have prevailed on its anti-SLAPP motion "is an essential prerequisite to an award of attorney fees and costs." (*Id.* at p. 1457.) "Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.'" (*Park v. Board of Trustees of California State*

4

As to step one, the court concluded the Wolffs' statements constituted protected activity pursuant to section 425.16, subdivision (e). As to step two, the court concluded Mendonca and Hamer could not establish a reasonable probability of success on the merits of the petition because they "did not have standing to bring the petition in the conservatorship matter." The court cited authority stating, " '[E]very action must be prosecuted in the name of the real party in interest,' " that " 'the person or entity possessing the right sued upon is the real party in interest,' " and that a "plaintiff that is not a real party in interest lacks standing to sue." Based on the petition, the court concluded that Mendonca and Hamer—not the Kellers—were the persons alleged to have been damaged by the Wolffs' activities. Therefore, Mendonca and Hamer "possessed the right to sue, not the Kellers."

Because the probate court concluded the Wolffs' would have prevailed on their anti-SLAPP motion, it found they were entitled to attorney fees pursuant to section 425.16, subdivision (c). The court determined Mendonca and Hamer were the real parties in interest and were jointly and severally liable for the attorney fees owed to the Wolffs, and it ordered Mendonca and Hamer to pay $53,445.34 in attorney fees. The order stated, "Neither Ronald Wayne nor Barbara Lynn Keller, nor their estate, are liable for the attorney's fees ordered by this motion."

In July 2023, Mendonca, personally and as conservator, and Hamer, personally, filed a "notice of intention to move to set aside and vacate order and enter another different order" pursuant to sections 663 and 663a. (Capitalization and boldface omitted.) Relying on *Moore v. Kaufman* (2010)

University (2017) 2 Cal.5th 1057, 1061.) If the plaintiff cannot make this demonstration the court will strike the claim. (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

189 Cal.App.4th 604 (*Moore*), they argued the probate court could not award attorney fees against them because Mendonca was not a party to the action in his personal capacity and Hamer was not a party at all. Therefore, they argued the attorney fees order was void to the extent it determined they were the real parties in interest and ordered them to pay the attorney fees. The Wolffs opposed. After a hearing, the probate court issued an order denying the motion to set aside and vacate its attorney fees order. The court concluded both that the motion was untimely and that the court's 75-day jurisdiction period to entertain the motion had expired. The court also informally "express[ed] its opinion" that it would deny the motion if it could consider the merits. The court reasoned that Mendonca and Hamer "made themselves the real parties in interest" for the petition and the anti-SLAPP motion and they "are therefore parties" under section 425.16 for purposes of awarding attorney fees.

Mendonca and Hamer filed a notice of appeal, appealing both the order on the motion for attorney fees and the order on the motion to set aside and vacate the fee order.

## II. DISCUSSION

Mendonca and Hamer argue the probate court's order awarding attorney fees against them personally is void because they are not parties to the conservatorship proceeding. We disagree.

### A. Motion for Attorney Fees

The anti-SLAPP statute mandates that "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." (§ 425.16, subd. (c)(1).) "The determination of the legal basis for an award of attorney fees is a question of law, which we review

6

de novo." (*Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation* (2019) 33 Cal.App.5th 38, 45.)

Mendonca and Hamer do not challenge the Wolffs' entitlement to attorney fees as the prevailing defendants on their anti-SLAPP motion.[4] Rather, they challenge the probate court's order that the attorney fees be paid by Mendonca, who they contend is not a party in his personal capacity, and Hamer, his attorney. The anti-SLAPP statute awards attorney fees to a prevailing defendant but is silent regarding who must, or may, be ordered to pay them. (§ 425.16, subd. (c)(1).)

Mendonca and Hamer rely heavily on *Moore*, *supra*, 189 Cal.App.4th 604. There, after granting an anti-SLAPP motion, the trial court entered judgment awarding attorney fees against both the plaintiff and the plaintiff's attorney. (*Id.* at pp. 607–608.) The appellate court held that the judgment was void as to the attorney "because she was not a party to the litigation and section 425.16 does not authorize an award of attorney fees against a party's attorney." (*Id.* at p. 614.) Quoting the California Supreme Court's decision in *Ketchum v. Moses* (2001) 24 Cal.4th 1122 (*Ketchum*), the *Moore* court stated, "[T]he purpose of the mandatory fee award is to discourage SLAPP suits 'by imposing the litigation costs on *the party*' that files a SLAPP suit." (*Moore*, at p. 614.) The *Moore* court found "no case authority for the proposition that section 425.16" mandates an award of attorney fees against an attorney and explained that "nothing in the statute's language suggests that, although the

---

[4] Despite devoting portions of their opening brief to assert that the Wolffs were not entitled to an award of attorney fees in the first place because their statements did not arise from activity protected by the anti-SLAPP statute and, therefore, their anti-SLAPP motion would have been denied on the merits had it been heard, Mendonca and Hamer clarify in their reply brief that they "do not appeal the determination of whether the trial court should have even awarded [a]nti-SLAPP attorney's fees to the Wolffs."

award against a losing plaintiff is mandatory, the court retains discretion to grant an award against the plaintiff's attorney as well." (*Id.* at p. 615.)

*Moore* is not directly on point with the unusual circumstances presented here. Unlike in *Moore*—a standard civil lawsuit—this is not a situation where Hamer merely drafted and filed a pleading for her client. (See *Moore*, *supra*, 189 Cal.App.4th at p. 607.) Here, the petition was filed to benefit Mendonca and Hamer personally. The probate court did not order Hamer to pay the awarded fees merely in her role as Mendonca's attorney. It did so because it found Hamer to be a real party in interest. Mendonca and Hamer focus on language in *Ketchum* and *Moore* regarding parties and nonparty attorneys. They argue that Mendonca and Hamer are not parties to the conservatorship proceeding in their personal capacities and, therefore, the court could not order them to pay attorney fees. We disagree.

The petition is a cause of action under the anti-SLAPP statute. (See § 425.16, subd. (b)(1); see also *Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 ["allegations of protected activity that are asserted as grounds for relief" constitute "a 'cause of action' " under the anti-SLAPP statute (italics omitted)].) Mendonca and Hamer, as individuals, brought the cause of action and requested relief from the trial court. They are, therefore, parties under the anti-SLAPP statute. (See § 425.16, subd. (b)(1) [a "cause of action . . . shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim"].) Whether we call Mendonca and Hamer plaintiffs, parties, or real parties in interest, see discussion *post*, they are parties to the petition.

Further, the probate court concluded, and we agree, that Mendonca and Hamer are the real parties in interest to the petition. Section 367 states,

8

"Every action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute." A "real party in interest" ordinarily is defined as "the person who has the right to sue under the substantive law." (*River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1226.) Defamation may be effected by either libel or slander. (Civ. Code, § 44.) Defamation "injures a person's reputation." (*Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 85.) It "invades the interest in personal or professional reputation and good name. A defamation claim vindicates personal interests." (*Ibid*.) Here, the petition is based on a claim for defamation. The title is a petition to restrain the Wolffs "from libel, slander and harassment of conservator and his attorney." (Capitalization and boldface omitted.) During the hearing on the motion for attorney fees, Hamer confirmed the petition was one for defamation, arguing that they had stated "a defamation action."

The petition allegations demonstrate that Mendonca and Hamer are the persons "who [have] the right to sue" (*River's Side at Washington Square Homeowners Assn. v. Superior Court, supra*, 88 Cal.App.5th at p. 1226) for defamation because the Wolffs' alleged conduct invaded their "interest in personal or professional reputation and good name" (*Truck Ins. Exchange v. Bennett, supra*, 53 Cal.App.4th at p. 85). The petition lists many statements and alleges they were false and defamatory publications which exposed Mendonca and Hamer to hatred, contempt, ridicule, or obloquy, or which had a tendency to injure them in their occupations. It alleges the Wolffs' defamatory statements intended to " 'get even' " with Mendonca and Hamer "by attempting to ruin their personal and professional reputations, and to damage them in their respective professions and careers." It alleges the court should restrain the Wolffs "in order to protect the Conservator, [Mendonca],

9

and his attorney, [Hamer], from false, derogatory and unprivileged publications." The petition requests an order enjoining the Wolffs from publishing any false and derogatory statements about Mendonca or Hamer, requiring the Wolffs to remove and retract false and derogatory statements about Mendonca or Hamer, and requiring the Wolffs to publicly admit that the statements they published were untrue and to apologize to Mendonca and Hamer. The petition was, therefore, brought to vindicate Mendonca's and Hamer's interests.

We reject Mendonca and Hamer's contention that the petition was filed for the Kellers' benefit. They claim they filed the petition so that the alleged defamation would not cause them "to be so overly burdened in their roles as the Kellers' conservator and attorney that they both resigned." The petition itself includes an allegation that the Wolffs' statements were intended to interfere with the administration of the conservatorship and to cause Mendonca and Hamer to give up and to allow Sharon to take over as conservator. Mendonca and Hamer do not demonstrate, though, that any statements harmed the Kellers. There is no suggestion that the Wolffs made defamatory statements about the Kellers. That the Wolffs' actions allegedly made it a burden for Mendonca and Hamer to serve as conservator and attorney, respectively, does not mean that the petition was brought to vindicate the Kellers' interests, as opposed to Mendonca's and Hamer's interests.

Requiring Mendonca and Hamer to pay attorney fees also furthers the purpose of the anti-SLAPP statute, which is "to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights" of petition or free speech. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056.) The "legislative aim" in the statute's attorney fees provision was to strengthen

10

enforcement of certain constitutional rights "by placing the financial burden of defending against so-called SLAPP actions on the party abusing the judicial system." (*Ketchum, supra*, 24 Cal.4th at p. 1136; see also *Liu v. Moore* (1999) 69 Cal.App.4th 745, 750 [relief provided "to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'participation in matters of public significance' "].) Here, Mendonca and Hamer's petition is the action which placed the burden of defense on the Wolffs. The probate court concluded the petition was a SLAPP action[5], and Mendonca and Hamer have not appealed that determination. Therefore, Mendonca, personally and not as conservator, and Hamer, personally, were the ones "abusing the judicial system." (*Ketchum*, at p. 1136.)

Ordering Mendonca to pay the awarded fees in his capacity as conservator—and thus from the Kellers' estate(s)—would not further the purpose of the anti-SLAPP statute nor would it comport with the functions of a probate conservator. (See, e.g., Prob. Code, §§ 2351, subd. (a) [a conservator of the person "has the care, custody, and control of" the conservatee], 2401, subd. (a) [conservator of the estate "has the management and control of the estate" and must use ordinary care and diligence in such management and control]; *Conservatorship of Lefkowitz* (1996) 50 Cal.App.4th 1310, 1314 [a

---

[5] On appeal, neither side argues that the trial court lacked jurisdiction over the petition for injunctive relief. Nor do we evaluate the topic. We merely comment that even if the petition could have been rejected by the trial court on non-SLAPP grounds, it was acceptable for the court to decide the anti-SLAPP motion and award attorney fees under the anti-SLAPP statute. (See *Barry v. State Bar of California* (2017) 2 Cal.5th 318, 329; see also *id*. at p. 325 ["to exempt a plaintiff's claims from the reach of the anti-SLAPP statute because they fail for a reason unrelated to their substantive merit would open up new avenues for harassing and retaliatory litigation; it would permit plaintiffs to bypass the protections of the anti-SLAPP statute simply by filing suit in a tribunal that has no power to entertain the claim"].)

conservator must exercise his "powers solely in the interests of the conservatee"].) Mendonca and Hamer decided to file the petition in the conservatorship proceeding rather than initiate a separate civil lawsuit. They decided to identify Mendonca, as conservator, as the only person "petition[ing] the Court for an order."[6] Those decisions should not shield them from having to pay attorney fees to the prevailing defendants pursuant to section 425.16.

Finally, Mendonca and Hamer assert that in its order awarding attorney fees, the probate court found both that they were not real parties in interest and that they were real parties in interest. We need not determine whether we agree with their characterization of the court's order because our review is de novo. (*Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation*, *supra*, 33 Cal.App.5th at p. 45.) Therefore, we need not, and do not, address their argument that the probate court is "estopped from denying its finding" that Mendonca and Hamer, as individuals, are not real parties in interest.

In sum, we conclude that the probate court's order requiring Mendonca and Hamer to pay the awarded attorney fees is not void. To be clear, our conclusion does not mean that any attorney who drafts and files a pleading subject to a successful anti-SLAPP motion necessarily becomes a plaintiff, party, or real party in interest. We merely conclude that in these unusual circumstances, the court could order attorney fees awarded pursuant to section 425.16 be paid by Mendonca and Hamer.

---

[6] We point out that the petition names both Mendonca and Hamer as requesting the specified relief from the court.

### B. *Motion to Set Aside and Vacate Attorney Fees Order*

Mendonca and Hamer also appeal the probate court's order denying their motion to set aside and vacate the order awarding attorney fees. In that motion, they argued the attorney fees order was void for the reasons discussed above. The court denied the motion on two procedural grounds—untimeliness and lack of jurisdiction. Because we concluded, *ante*, that the attorney fees order is not void, we need not, and do not, address the procedural issues raised by the appeal of the order denying the motion to set aside and vacate.

## III.   DISPOSITION

The June 8, 2023 order on the motion for attorney fees and the October 10, 2023 order on the motion to set aside and vacate the attorney fees order are affirmed. The Wolffs are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

HILL, J.*

A169030, A169031
*Mendonca v. Wolff*

---

\* Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.